## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

FREDERICK BERNARD MOORE
Reg. #26724-009                                                                              PLAINTIFF

v.                                           3:21-cv-00177-DPM-JJV

STEVE FRANKS, Sheriff,
Greene County Detention Facility; *et al.*                                   DEFENDANTS

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge D.P. Marshall Jr.    Any party may serve and file written objections to this Recommendation.    Objections should be specific and include the factual or legal basis for the objection.    If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.    Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this Recommendation.    Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

## I.    INTRODUCTION

Frederick Bernard Moore ("Plaintiff") was a federal prisoner when he filed this *pro se* action seeking relief pursuant to 42 U.S.C. § 1983.    But he recently was released from custody. (Doc. 52.)    In his Complaint, Plaintiff claims that, while he was in the Greene County Detention Facility from September 22, 2019 until March 6, 2020, Defendants Steve Franks, Brent Cox, Jami Trowbridge, Tammy Glenn, Terrin Huggins, Anthony Carter, and Kim Johnson failed to provide him with constitutionally adequate medical care for rheumatoid arthritis.[1]    (Doc. 2.)    Plaintiff

---

[1] All other claims and Defendants have been previously dismissed without prejudice.    (Doc. 6.)

brings these claims against Defendants in their official and personal capacities.  (*Id*.)  And monetary damages are the only remedy he seeks.

Defendants Trowbridge, Glenn, Huggins, Carter, and Johnson have filed a Motion for Summary Judgment.  (Docs. 49-51.)  Defendants Franks and Cox have filed a separate Motion for Summary Judgment raising their own arguments for dismissal and adopting those raised by the other Defendants.  (Docs. 46-48.)  Plaintiff has not responded, and the time to do so has passed. Thus, the facts in Defendants' Statement of Undisputed Facts (Docs. 50) are deemed admitted. *See* Local Rule 56.1(c); *Jackson v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001).    After careful consideration and for the following reasons, I recommend both Motions be GRANTED, Plaintiff's claims against Defendants be DISMISSED with prejudice, and this case be CLOSED.

## II.    SUMMARY JUDGEMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.    Fed. R. Civ. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).    When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.    *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).    The nonmoving party may not rely on allegations or denials but must demonstrate the existence of specific facts that create a genuine issue for trial.    *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).    The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.    *Id.* (citations omitted).    A dispute is genuine if the evidence

is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.    *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).    Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.    *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.    FACTS

The undisputed facts (Docs. 50), which are supported by Defendants' sworn declarations (Docs. 49-3, 49-4, 49-5, 49-6, 49-13) and medical records (Docs. 49-9, 49-10, 49-11, 49-12), are as follows.    During the relevant times in this lawsuit, Plaintiff was in the custody of the United States Marshals Service (USMS).    On September 22, 2019, he was transferred from the Pulaski County Regional Detention Facility (PCRDF) to the Greene County Detention Facility (GCDF).[2] During his intake examination, Plaintiff told Nurse Trowbridge he had rheumatoid arthritis (RA) and that he had previously received Humira for that condition.[3]    However, records from the PCRDF said he had only received acetaminophen, ibuprofen, and prednisone for that condition, and that prednisone recently had been discontinued.    Thus, the GCDF medical staff initially prescribed ibuprofen and acetaminophen to treat Plaintiff's RA.    And, throughout his confinement in that facility, his RA medications were often given to him by LPN Johnson.

---

[2] In a previously filed case, the Court found Plaintiff received constitutionally adequate medical care for RA while he was in the PCRDF from May to September 2019.  *Moore v. Cox*, No. 3:20-cv-109-JM-JJV, 2002 WL 17168499 (E.D. Ark. Nov. 1, 2022), *rec. adopted*, 2022 WL 17097738 (E.D. Ark. Nov. 21, 2022).

[3] RA is "an autoimmune disorder characterized by chronic inflammation, particularly in the joints." (Doc. 49-7 at 2.)   It is a lifelong condition without a cure.  (*Id*.)   Instead, the symptoms of RA can be medically managed with "nonsteroidal anti-inflammatory drugs (NSAIDS, such as Ibuprofen), corticosteroids, disease-modifying antirheumatic drugs (DMARDs, such as methotrexate or hydroxychloroquine), or biologic agents (such as Humira)."   (*Id*.)

On October 2, 2019, LPN Huggins examined Plaintiff, who reported a pain level of eight out of ten in his legs and feet; swelling in his lower limbs; and difficulty climbing stairs.    LPN Huggins observed Plaintiff had a normal gait with a slightly decreased range of motion.    She then contacted APRN Carter, who prescribed meloxicam and ibuprofen to treat Plaintiff's RA.    Soon thereafter, on October 24, 2019, LPN Trowbridge examined Plaintiff, who reported a pain level of nine, as well as swelling in his ankles, knees, hands, and neck.    LPN Trowbridge also noted Plaintiff limped while walking and had a "slightly" decreased range of motion.    She then advised him to submit another sick call request if the recently added meloxicam did not help his symptoms. Approximately two weeks later, on November 5, 2019, LPN Huggins examined Plaintiff in response to his sick call request reporting continued RA pain and obtained authorization from APRN Carter to add methotrexate and acetaminophen.

On December 5, 2019, Plaintiff was examined by LPN Trowbridge.    Plaintiff continued to report a pain level of eight, but LPN Trowbridge noted he now had a "greatly" decreased range of motion.    She continued his prescription for methotrexate, meloxicam, and acetaminophen. And, later that day, LPN Huggins submitted a request to the USMS to start Humira.    Importantly, it is undisputed that because Plaintiff was in federal custody, the USMS had final decision-making authority regarding his prescription medications.    After receiving the request, the USMS asked the GCDC medical staff to obtain documentation that Plaintiff had previously received Humira and for an APRN to examine Plaintiff to determine if he needed that medication.    On December 10, 2019, APRN Carter examined Plaintiff; determined his elbows, knees, hands, and fingers were enlarged; diagnosed him with RA; and requested approval from the USMS for Humira.    And, on the following day, he ordered that Plaintiff be given a bottom bunk.

On December 18, 2019, the USMS obtained approval for Humira.    But for unknown

reasons, they did not inform the GCDC medical staff of that decision until January 24, 2020.    On the same day, the jail ordered Humira injections from a third-party pharmacy, but the medication was not received until after Plaintiff left the facility on March 6, 2020.    During this time period, Plaintiff continued to receive methotrexate, meloxicam, and acetaminophen for RA.    And he was examined at least one time by LPN Trowbridge, who noted that although Plaintiff continued to have swelling, difficulty walking, and a decreased range of motion, he reported his pain had decreased to a six or seven.

## IV.    DISCUSSION

"The Eighth Amendment requires state prison officials to provide inmates with needed medical care."    *Cullor v. Baldwin*, 830 F.3d 830, 836 (8th Cir. 2016).    To defeat summary judgment and proceed to trial on his Eighth Amendment inadequate medical care claim, Plaintiff must have evidence: (1) he had an objectively serious medical need; and (2) Defendants subjectively knew of, but deliberately disregarded, that serious medical need.    *See Shipp v. Murphy*, 9 F.4th 694, 703 (8th Cir. 2021); *Barr v. Pearson*, 909 F.3d 919, 921 (8th Cir. 2018). Clearly, Plaintiff had an objectively serious medical need for treatment of RA.    *See De Rossitte v. Correct Care Sols., LLC*., 22 F.4th 796 (8th Cir. 2022) (an objectively serious medical need is one "diagnosed by a physician as requiring treatment" or "so obvious that even a layperson would easily recognize the necessity for a doctor's attention").    Thus, this case turns on the second element of deliberate indifference, which is a high threshold that goes well beyond negligence or gross negligence.    *Langford v. Norris,* 614 F.3d 445, 460 (8th Cir. 2010).    To establish deliberate indifference, there must be evidence prison officials "recognized that a substantial risk of harm existed <u>and</u> knew that their conduct was inappropriate in light of that risk."    *Shipp,* 9 F.4th at 703 (emphasis in the original).    This level of mental culpability is "akin to criminal recklessness."    *Id*.

At the onset, I note there is no evidence Defendants Sheriff Franks or Jail Administrator Cox were personally involved in Plaintiff's medical care for RA.   And they cannot be held liable merely because they are jail supervisors.   *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (because there is no vicarious liability in § 1983 actions, a prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (the "general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support [§ 1983] liability").   Thus, these two Defendants are entitled to summary judgment as a matter of law on the inadequate medical care claims raised against them in their personal capacities.

As to the medical Defendants, it is undisputed that while Plaintiff was at the GCDF, Defendants Carter, Trowbridge, Glenn, Huggins, and Johnson treated his RA with a variety of over-the-counter and prescription medications, examined him frequently in response to his sick call requests, sought approval from the USMS for treatment with Humira, and ordered that medication on the same day they received authorization.   Nothing about this course of treatment suggests deliberate indifference. *See Fourte v. Faulkner Cnty.,* 746 F.3d 384, 390 (8th Cir. 2014) (finding that no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner"); *Logan v. Clarke*, 119 F.3d 647, 649-50 (8th Cir. 1997) (same).

And the medical Defendants say in their sworn declarations that, in their professional medical opinions, the care they provided for Plaintiff's RA was "appropriate, reasonable, within the standard of care" and "did not cause any harm or worsening of his medical condition."   (Docs. 49-3, 49-4, 49-5, 49-6, 49-13.)   "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot

create a question of fact by merely stating that he did not feel he received adequate treatment." *See Cejvanovic v. Ludwick*, 923 F.3d 503, 508 (8th Cir. 2019); *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (same). Plaintiff has not come forward with any evidence to refute these professional medical opinions.

Instead, he says the medical Defendants were deliberately indifferent because they did not provide him with Humira. However, in his sworn declaration, Dr. Absalom Tilley (who is not a party) explains Humira is contraindicated in the correctional setting because it depresses the immune system and increases the patient's risk of contracting illnesses. (Doc. 49-3.) And Plaintiff has not offered any contrary evidence.

Finally and importantly, it is undisputed that the USMS had the sole authority to authorize treatment with Humira. There is no evidence that medical Defendants acted with deliberate indifference in requesting the USMS to authorize Humira or in ordering that medication, from a third party provider, on the same day that they learned it had been approved. Although the medication did not arrive at the GCDF before Plaintiff left the facility, there is no evidence the medical Defendants had any control over the matter. In sum, Plaintiff has not presented any evidence demonstrating the medical Defendants knew a "substantial risk of harm existed" <u>and</u> "that their conduct was inappropriate in light of that risk" when they treated his RA while he was at the GCDF. *See Shipp,* 9 F.4th at 703; *see also Redmond v. Kosinski*, 999 F.3d 1116, 1120 (8th Cir. 2021) (to defeat summary judgment and proceed to trial, prisoners must clear a "substantial evidentiary threshold" to show medical providers acted with deliberate indifference).

As I explained to Plaintiff in *Moore v. Cox*, 2002 WL 17168499 (E.D. Ark. Nov. 1, 2022), I am sympathetic to the pain and discomfort he experienced as a result of having RA and his desire to have that condition treated with Humira. But prisoners are not constitutionally entitled to the

medical care of their choosing.　*Barr*, 909 F.3d at 921-22; *see also Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) ("inmates have no constitutional right to receive a particular or requested course of treatment").　Instead, prison medical providers are free to exercise their independent medical judgment.　*Barr*, 909 F.3d at 921–22; *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008).　And as explained by the Eighth Circuit, the "existence of a possible alternate course of treatment, which may or may not have been successful, is not sufficient to raise an inference of deliberate indifference where the prison officials acted reasonably but ultimately failed to avert the harm."　*Dulany,* 132 F.3d at 1241.　Accordingly, I conclude Defendants Carter, Trowbridge, Glenn, Huggins, and Johnson are entitled to summary judgment as a matter of law on the inadequate medical care claims Plaintiff has raised against them in their personal capacities.

## B.　Official Capacity Claims

Although it is unclear, is appears Plaintiff is basing his official capacity claim on his belief that the GCDF and/or Turn Key Health Clinics, LLC[4] had an unconstitutional policy or practice of refusing to prescribe Humira because it was too expensive.　*See Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (to proceed with an official capacity claim against county officials, there must be evidence the constitutional violation was caused by an official policy, custom, or practice); *Harris v. Corizon, LLC*, No. 20-3094, 2022 WL 1448209, at *3 (8th Cir. May 9, 2022) (same law applies to private corporations acting under color of law); *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (same).

Plaintiff's official capacity claim fails as a matter of law because there is no evidence of

---

[4] Turn Key Health Clinics, LLC is a private company that provides medical services to the PCRDF. (Docs. 49-8).

an underlying constitutional violation.  *Rusness v. Becker Cnty., Minnesota*, 31 F.4th 606, 617 (8th Cir. 2022) ("the existence of a constitutional violation is a threshold issue for" a policy or practice claim "to move forward"); *Schoettle v. Jefferson Cnty.* 788 F.3d 855, 861-62 (8th Cir. 2015) ("We have long held that neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim").    And Plaintiff has not offered any evidence to substantiate his claim that either the GCDF or Turn Key had a policy or practice of denying Humira due to its cost.    *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (at summary judgment, the plaintiff "must discard the shielding cloak of formal allegations and meet proof with proof by showing there is a genuine issue of material fact"); *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010) (to avoid summary judgment, "the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor").    For these reasons, I conclude all Defendants are entitled to summary judgment as a matter of law on the official capacity claims.

### C.    Exhaustion of Administrative Remedies & Qualified Immunity

Defendants Franks and Cox separately argue they are entitled to summary judgment because Plaintiff failed to properly exhaust his administrative remedies.  (Doc. 46.)  But the deadline for seeking summary judgment on that basis expired on July 11, 2022, which was seven months before they filed their Motion for Summary Judgment on February 13, 2023.  (Docs. 38, 46.)  And Defendants did not seek an extension of that deadline.

Defendants Frank and Cox also say they are entitled to summary judgment based on qualified immunity.  (Doc. 47.)  For the reasons previously explained, I agree with that assertion because there is no evidence they were directly involved in Plaintiff's medical care for RA.  *See MacKintrush v. Pulaski Cty. Sheriff's Dep't*, 987 F.3d 767, 770 (8th Cir. 2021) (defendants are

entitled to qualified immunity if: (1) the evidence, viewed in the light most favorable to the plaintiff, does not establish a violation of a constitutional right; or (2) the constitutional right was not clearly established at the time of the alleged violation, such that a reasonable official would not have known that his or her actions were unlawful); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (courts have discretion in deciding which of the two prongs should be addressed first).

In contrast, qualified immunity does not apply to the claims raised against Defendants Franks and Cox in their official capacities. *See Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (claims against county employees in their official capacities "must be treated as a suit against the County"); *Thurmond v. Andrews*, 972 F.3d 1007, 1013 (8th Cir. 2020) ("Unlike the individual officers . . . municipalities do not enjoy qualified immunity"); *Mogard v. City of Milbank*, 932 F.3d 1184, 1192 (8th Cir. 2019). Nevertheless, as previously discussed, I conclude Defendants Franks and Cox are entitled to summary judgment on the official capacity claims because there is no evidence of an underlying violation of Plaintiff's constitutional right to receive adequate medical care.

## V.    CONCLUSION

IT IS, THERFORE, RECOMMENDED that:

1.      Defendants' Motion for Summary Judgment (Doc. 46) be GRANTED, and Plaintiff's claims against Defendants Cox and Franks be DISMISSED with prejudice.

2.      Defendants' Motion for Summary Judgment (Doc. 49) be GRANTED, and Plaintiff's claims against Defendants Trowbridge, Johnson, Huggins, Glenn, and Carter be DISMISSED with prejudice.

3.      The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting this Recommendation and the accompanying Judgment would not

be taken in good faith.

Dated this 11th day of April 2023.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE